People v. Steven Sanders Lawrence O'Neill Stephenson hearing, the State argued for the first time that based upon Mr. Sanders' prior juvenile adjudication for armed robbery, he was eligible for an extended term sentence under the statute that provides for an extended term when a defendant has a prior delinquent adjudication for a Class I or Class X felony. The court then sentenced Mr. Sanders to an extended term of 45 years. However, because Mr. Sanders' prior adjudication for armed robbery was not alleged in the charging instrument, and the State did not submit and prove the fact of the prior adjudication to the trial are fact beyond a reasonable doubt, the extended term portion of the sentence was improper under New Jersey v. Apprendi and 73511-3c5. The Supreme Court in Apprendi held, other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the trial fact and proved beyond a reasonable doubt. Thus, any fact other than a prior conviction must be alleged and proved beyond a reasonable doubt. The legislature codified the holding in Apprendi in Section 3113c5, which provides that if an act alleged other than a prior conviction is sought to be used to increase the branch of penalties beyond the statutory maximum, the fact must be included in the charging instrument provided to the trial fact and proven beyond a reasonable doubt. In this case, Mr. Sanders was convicted of Class X felony of attempt murder, which had a sentencing range of 6 to 30 years in prison. As noted, the trial court sentenced Mr. Sanders to the extended term sentence based upon his prior adjudication. However, the state's failure to provide pre-trial notice of the intent to seek an extended sentence and submit and prove this fact to the trial fact beyond a reasonable doubt, Mr. Sanders' due process rights were violated, as was Apprendi in Section 111-3c5. As such, the trial court improperly imposed an extended term sentence, rendering the extended term portion of the sentence void. For this reason, this court should vacate the extended term portion of the sentence. The result of another matter to be considered here, Apprendi in Section 111-3c5 excludes prior convictions from its coverage. The question then becomes, is a juvenile adjudication a conviction? I submit to this court that it is not a conviction. For example, the Illinois Supreme Court in Pieper v. Taylor held that a juvenile adjudicated delinquent is not a person convicted of a felony for purposes of the offense of escape. Moreover, in the court in Embraer, Antoine B. found that a prior adjudication for theft was not a prior conviction that can be used to elevate a current adjudication for a felony. Thus, a juvenile adjudication is not a conviction and therefore is not a fact exempt from the coverage of Apprendi in Section 111-3c5. I acknowledge, and this was addressed in the brief, that the Third District Appellate Court reached a different conclusion in Pieper v. Jones. The Supreme Court has allowed PLA in Jones in the cases pending in the Supreme Court. In Jones, the case of First Depression as to whether a juvenile adjudication qualifies it as a conviction, the defendant was sentenced to an extended term, very similar facts as this, and based upon a prior adjudication, was sentenced to an extended term. However, the fact and nature of that adjudication was not alleged and proven exactly here. And I would appeal that the defendant argued that the imposition of the extended term violated Apprendi because the prior adjudication was not alleged and proven. The Third District held that defendant's conviction, prior adjudication qualifies as a conviction and thus falls within the exceptions of Apprendi in Section 111-3c5. However, I urge this Court to not follow Jones. As other jurisdictions, as set out in my brief, have found that prior adjudications do not qualify as convictions so as to bring it within the Apprendi exception. Counsel, let me ask you a question on this issue. In the Jones case, they raised an issue of the ambiguousness of the PSI. How clear was the PSI of the prior adjudication? In this case, we've got the PSI as well and the references by count. But we've also got the trial court, the sentencing hearing, having the juvenile file brought up, looking at it, and the court didn't use the magic words, I take judicial notice of this juvenile file and find such and such, but made a statement prior adjudication for the, what was the other advance? It was armed robbery, I think, in Jones while it wasn't here in ours. It was armed robbery. It was armed robbery. Correct. Here. So doesn't that take away the ambiguous argument? Because I look at the court statement and it looks like taking judicial notice of that juvenile file. Your Honor, this is an alternative argument to my primary argument, that is, that the prior juvenile adjudication is not a conviction and therefore must be submitted and proven beyond reasonable doubt. Alternatively, I'm arguing if this court considers the prior adjudication a conviction, then the documents that the State relied upon to prove the prior adjudication qualifies as either a Class I or Class X felony for purposes of the extended term provision of the statute, were insufficient. And I acknowledge that in sentencing, the prosecutor submitted a PSI that indicates that Mr. Sanders was, had been charged with attempt murder and armed robbery, that this position stated that he was guilty and sentenced to five years probation. However, Your Honor, the PSI does not contain any documents from the juvenile court file or set out any specific facts, no factual basis, what actual offense that Mr. Sanders was adjudicated guilty of. It just says guilty. Now, he was charged with attempt murder and armed robbery, I believe. But I'm arguing that under the U.S. Supreme Court case in Shepard v. U.S., it's insufficient to establish that Mr. Sanders was convicted of a Class I or Class X felony. And as to the court file, the judge stated that Mr. Sanders was adjudicated in account to armed robbery. However, the court file was not described, was not made part of the record. The court file did not include the charging instruments, the factual basis, or the terms of the guilty plea agreement. Thus, following Shepard v. United States, I urge this court to find that that was insufficient to prove conclusively that Mr. Sanders had been convicted of, adjudicated of an offense that qualifies as equal to a Class I or Class X felony for purposes of invoking that statute. Again, that's an alternative argument, but I submit to the court that those documents were insufficient under Shepard v. United States. And again, I urge this court to not follow Jones and to follow the United States, the Illinois Supreme Court case in Taylor, in this Emory v. Antoine B case, and find that prior adjudication should not qualify as convictions. And the, in this case, that was not proven sufficiently with the documents that were submitted. I think, counsel, you do agree that the Supreme Court may answer this question for us here shortly on Jones. I see the oral argument was in March, and they've had it under advisement since then. That's correct, Your Honor. It could come any day. But for the purpose of this argument, I'm arguing that Jones was not well-reasoned, and this court should not follow it, and should instead find, both based on Taylor, Emory, Antoine B, and policy reasons why a juvenile adjudication should not be considered conviction. Thank you, counsel. Counsel, you'll have a chance for your time. Thank you. Argument for the State.  Please support. Counsel. Occasionally, what happens, and frankly, it's happened this morning, I've been watching arguments, parties sort of argue past each other. You take your best argument, argue that. Opposing counsel comes up, and they argue their best argument, and they're sort of arguing past each other, and the rub is on the edge. To be totally candid with the court, I'm going to meet the defendant at the 50-yard line today. I want to address this issue head-on, pointing out that in our brief, we argued some positions that we did strictly to preserve those issues for the attorney general's office, knowing that at the time we drafted this brief, that these issues were going to be before the Supreme Court. Now, Justice Schwarm, you're absolutely correct. We'll know the answer to these questions, whether we like them or not, probably within days. But, Justice Schwarm, to your point on the juvenile file, I have listened to the oral argument in that case at least three or four times. It's clear that the focus – now, I'm not a betting man, but if I was, I would never bet on the outcome of a Supreme Court decision based on oral arguments. I'm not that foolish. However, the primary focus of the court's questioning in that case has been what to do on remand with the PSI. There was one substantive question about whether a juvenile adjudication could be a conviction under the statute, and I think that may have come up at the end of the attorney general's presentation or it may have even been in OSAF's rebuttal. I'm not certain about that. However, that's clearly the direction the court's going. So, to your point on the PSI, it's a good one. The reason that we don't know much more about what was in the juvenile file that the court had here was that defendant, as in Jones, never objected to this. He never challenged the statute. He never challenged the PSI. He never said, you can't consider this. But in Jones, the defendant, he denied having that prior adjudication. Correct. So, that's even a step beyond what we have here, Your Honor. So, just for those purposes, I would say that. Now, this sort of harkens back. I wasn't the best undergraduate student at SIU Carbondale, but I do remember some of my literature courses, and this situation sort of reminds me of Samuel Beckett's classic play, Waiting for Godot. So, I don't know which one of us is Vladimir and which one of us is Estragon here, but we're in an odd position where we're advocating for two positions. And I think it's overstated when attorneys come up here and say, oh, this case is on all fours. I don't remember the last time that I saw a case that was on all fours, like this case is, with the case before the Supreme Court in Jones. I looked again this morning, right before I came up from my vehicle to the courtroom. There was still nothing new. They had issued some, reissued some older cases with some corrections, but no Jones decision. Counsel, before you run out of time, and Mr. O'Neill's got some time for rebuttal, let's talk about the statute of limitations issue and the void or avoidable. And I'd like you to address that. We grant your motion to have, cite the additional case that the Fourth District just released on this retroactivity or the statute of limitations issue. But I'd like to hear some of your arguments today on that, if you want to make it. Thank you, Your Honor. Actually, I was hoping to transition to that. This reminds me again of the old saying, you know, don't look a gift horse in the mouth. I feel like in our opening brief, the State presented the defendant with a gift horse, and he's sort of rummaging around the mouth measuring teeth. We cited Cassavery in a footnote, and at the expense of making defendant's best argument for the exception to the two-year limitation for Section 214.01, the Supreme Court in Harvey in 2001 said that avoid sentence is merely one way to avoid the two-year limitations period. The limitations period under 214.01 is not a jurisdictional threshold. And here's what the Court said. There are exceptions to the two-year period when the person seeking relief, and this is just one of them, clearly shows that his delay was caused by some legal disability. It would be disingenuous for the State, and I certainly wouldn't argue it to this Court, to stand up here and say that if, in fact, for example, the Jones case had come out yesterday, for me to stand up here and say he didn't file this within two years, and this is a void-of-vote sentence rather than a void sentence under Cassavery, so he shouldn't get the relief that he's seeking because of that, I hate to use the phrase, legal technicality. But I think clearly this is the type of case that Harvey was designed around to protect the defendant in that regard. So my point in saying that is I only cited the additional authority because in response to our footnote, counsel had filed a supplemental, and when this Court gave us leave to file in response to that, I accepted that as a may, not a shall. So we didn't respond to that because I thought that this was not the appropriate forum to fight that Cassavery issue in light of the Harvey decision. I cited this additional authority just because it came out. I know it came out September 30th, that being my birthday. It came out in the afternoon. I looked at it over the weekend and talked about it Monday, called counsel on Tuesday, and then cited the additional authority just so that this Court would be aware of it. So if this Court wanted to talk about Cassavery in that regard, it would have the most up-to-date case on the point. We've argued a lot of cases, and you can see from the Fourth District jurisprudence where I'm also deputy director, we've argued those cases thoroughly. I just didn't think that this, in my judgment, was a good forum for that in light of the fact that if this Court did determine or the Supreme Court did determine that juvenile adjudications were not convictions under the statute, it was just a matter of justice and fairness in our estimation. Are there any other questions? No. No? No, thank you, Your Honor. So, Mr. Monique, you wouldn't want to address this avoidable statute of limitations issue? Sure, Your Honor. I filed, it was granted leave to file my supplemental brief in which I raised alternative reasons why Cassavery does not apply retroactively to this case. With this case, I'm arguing that the judgment is void, and Cassavery abolished the void judgment rule. So my position is two alternative theories that Cassavery does not apply retroactively. I take counsel's word that it's good for the reason why I didn't file a brief in response to my supplemental brief in which I raised those retroactive arguments, but there is no state response to the retroactive arguments before this Court other than a court drafting a motion to add a void of people versus Cassavery. But getting to the retroactive question, anything, counsel, do you want to respond to that additional authority that's been cited by this Court? Yes, Your Honor. I know that in your order yesterday that you provided me with 14 days to respond. And you anticipate doing a written response? Yes, yes, Your Honor. Yes. Well, the question comes down, if this Court finds that the prior adjudication is not a conviction and judgment is void, then you have to decide the statute of limitations period, you know, the two-year limitation period for petitions rooted for judgment, and whether that, because this judgment is void, the two-year limitations on a petition for rooted from judgment does not apply because a void judgment can be attacked at any time in any proceeding. So the question is whether the abolishment of the void judgment rule by Cassavery applies to this case. And, again, I set forth two arguments. The first argument, again, is that Cassavery does not apply retroactively. It's based upon a, the recent case from the First District of People v. Smith, where in Smith the defendant appealed the denial of his motion for leave to file a successive post-conviction petition, in which he argued, like Mr. Sanders does here, that his extended term sentences were not authorized by law and were void. During the appeal of Smith, Cassavery was decided. Thus, the appellate court in Smith considered the same question that is presented here, namely whether Cassavery applied retroactively to a case that was final on collateral review at the time Cassavery was decided. The Smith court began by noting that the determination as to whether retroactive application of Cassavery is warranted turns on whether the Cassavery decision announced a new rule or expanded on an existing rule because retroactive application only applies to new rules under the seminal case of Teague v. Lane. The Smith court found that Cassavery did not announce a new rule, but merely abolished the existing rule from ARNA. Therefore, Smith concluded that because Cassavery did not announce a new rule, it cannot be applied retroactively, and that the defendant has the right to challenge his sentence, unauthorized by statute, being void for the first time on appeal in a collateral proceeding. The Smith court found that Cassavery only applies prospectively from the day that it was announced. This court should follow Smith, well-reasoned decision of Smith, and find that Cassavery does not apply retroactively to this case. Therefore, like in Smith, Mr. Sanders has a right to challenge his sentence unauthorized by statute in this appeal. An alternative reason why, other than the Smith case, why Cassavery should not apply retroactively, is if this court finds that Cassavery did announce a new rule, it still does not apply retroactively to this case because new rules only apply to cases in the trial court and on direct review, or if one of two exceptions set out in Teague apply. Because neither of the exceptions in Teague apply to this case, Cassavery does not apply retroactively. So under those two theories, I ask your honors, from the Smith court, and that neither of the two exceptions in Teague apply, then the case that Cassavery does not apply retroactively, the old iron rule is in force, and the extended term sentence that was unauthorized by statute is void, and this court should ask this court to vacate that extended term portion of the sentence. Thank you, counsel. Thank both of you for your arguments. We'll take this case under advisement. Court will be in recess until 1.